UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER STEVEN BUTLER, CDCR #T-83516,<br><br>                              Plaintiff,<br><br>  vs.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                              Defendants. | Case No.: 3:23-cv-01402-RBM-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING MOTIONS TO PROCEED IN FORMA PAUPERIS; AND**<br><br>**(2) DISMISSING COMPLAINT PURUSANT TO 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1)**<br><br>**[Docs. 4, 5]** |

On July 24, 2023, Plaintiff Christopher Steven Butler ("Plaintiff"), a state prisoner proceeding pro se, filed a civil rights Complaint accompanied by a motion to proceed in forma pauperis ("IFP"). (Docs. 1, 2.) On August 9, 2023, the Court denied Plaintiff's motion to proceed IFP because it did not contain the necessary financial information and dismissed this action without prejudice. (Doc. 3.) Plaintiff has now filed two motions to proceed IFP which contain the required financial information ("Motions to Proceed IFP"). (Docs. 4, 5.)

///

1

## I. MOTIONS TO PROCEED IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $402.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a failure to prepay the entire fee only if leave to proceed IFP is granted pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007). Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1) & (4). The institution collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2). The plaintiff remains obligated to pay the entire fee in monthly installments regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

Plaintiff's inmate trust account statement shows average monthly deposits of $16.97 and an average monthly balance of $22.42 over the 6-months prior to initiating this suit, and an available balance of $0.00 at the time of filing. (Doc. 5 at 9–10.)

Therefore, the Court **GRANTS** Plaintiff's Motions to Proceed IFP and declines to impose an initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1) because his prison certificate indicates he may have no means to pay it. *See* 28 U.S.C. § 1915(b)(4) (providing

---

[1] In addition to a $350 fee, civil litigants, other than those granted leave to proceed IFP, must pay an additional administrative fee of $52. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2020)).

that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.")

## II. SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

### A. Standard of Review

Because Plaintiff is a prisoner proceeding IFP, the Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b).  The Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune.  *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) ("Failure to state a claim under § 1915A incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).") Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B. Plaintiff's Allegations

Plaintiff names as Defendants three individuals and two entities involved in his criminal conviction, including the prosecutor, San Diego County Assistant District Attorney Thomas Manning (Defendant ADA Manning"), a testifying witness, San Diego Police Department Detective Barry Vecchioni ("Defendant Vecchioni"), Plaintiff's trial

counsel Mark A. Chambers ("Defendant Chambers"), the San Diego County District Attorney's Office Conviction Review Unit, and the County of San Diego. (Doc. 1 at 8–9.) He alleges that on December 1, 2000, he was a passenger in a vehicle which was pulled over and searched by Federal Bureau of Investigation ("FBI") officers. (*Id*. at 10.) A black BB gun found in the glove box was seized and logged into evidence as Exhibit 40 in San Diego County Criminal Case No. SCN128327. (*Id*.) Several days later, the San Diego County District Attorney's Office filed a criminal complaint charging Plaintiff with three counts of kidnap for ransom and one count each of conspiracy to kidnap, robbery, grand theft auto and bank robbery. (*Id*. at 11.) Each count carried a firearm use enhancement. (*Id*.) In March 2001, FBI Agent Higgins testified as a firearms expert before a San Diego County Grand Jury, stating that he participated in the seizure of a "pellet-type" gun from a vehicle's glove box during Plaintiff's arrest, which he identified as Exhibit 40. (*Id*.) Agent Higgins testified that the gun resembled, and appeared to be when he first saw it, a real 45-automatic pistol, and that it was such an extremely close copy that most people would mistake it for a real gun. (*Id*. at 11–12.)

Plaintiff's criminal jury trial began in May 2002, and during the prosecution's case in chief the prosecutor, Defendant ADA Manning, called Defendant Vecchioni to testify. (*Id*. at 12.) Defendant Vecchioni initially testified that Exhibit 40 was a silver revolver, but after a conference between Defendant ADA Manning and Defendant Vecchioni, Defendant Vecchioni corrected himself and said the silver revolver was found in a shoe box in Plaintiff's bedroom. (*Id*. at 12–13.) Plaintiff claims Defendant ADA Manning knowingly elicited false testimony from Defendant Vecchioni when they represented to the jury that Exhibit 40, which was not a firearm, was the silver revolver, a real firearm. (*Id*.) Additionally, Plaintiff alleges his defense counsel, Defendant Chambers, breached his fiduciary duty by failing to challenge the admission of the silver revolver into evidence and by failing to follow up on his assurance to Plaintiff that he would expose the false evidence during closing argument. (*Id*.) Plaintiff claims the jury was deliberately misled to believe the silver revolver was a firearm which they could rely on to find the firearm use

enhancements true, which added 30 years to his sentence, but which under state law they could not have done with the BB gun. (*Id*. at 13–17.) It is Plaintiff's position that the introduction of the silver revolver was part of a conspiracy between Defendants ADA Manning, Vecchioni and Chambers to violate his state and federal constitutional rights to due process and to be free from false imprisonment. (*Id*. at 18–22.)

On June 14, 2021, Plaintiff filed an Application for Conviction Review to Defendant San Diego District Attorney's Office Conviction Review Unit contending he was innocent of and wrongly convicted of the firearm use allegation. (*Id*. at 22–23.) The application was denied based on a failure to present credible and verifiable evidence of innocence and because Plaintiff had admitted taking part in the crimes during his appeals and parole hearings. (*Id*. at 24.) Plaintiff claims that determination is erroneous because: (1) if his appellate counsel admitted on appeal he was guilty of the firearm use allegation it constitutes ineffective assistance of counsel, and (2) his parole hearing transcripts are silent as to whether he admitted to possession of the silver revolver. (*Id*.) He claims that Defendants County of San Diego, ADA Manning, Chambers, Vecchioni and the San Diego District Attorney's Office Conviction Review Unit violated his Fourteenth Amendment right to equal protection pursuant to a custom and practice of those entities joining forces to deprive African American males of their constitutional rights. (*Id*. at 24–25.)

C.  Discussion

In order to establish liability under 42 U.S.C. § 1983, a plaintiff "must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

Here, Plaintiff cannot state a § 1983 claim against his trial counsel Defendant Chambers because counsel "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Miranda v. Clark County, Nevada*, 319 F.3d 465, 468 (9th Cir. 2003) ("It does not matter that [plaintiff's counsel] was employed by a

public agency. . . . 'the duties and obligations are the same whether [counsel] was privately retained, appointed, or serving in a legal aid or defender program.' In that traditional role, . . . as a matter of law, he was not a state actor.") (quoting *Polk County*, 454 U.S. at 318, 321). Neither is Plaintiff able to state a § 1983 against the prosecutor, Defendant ADA Manning, with respect to allegations that he elicited false testimony or introduced false evidence at trial. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 341–42 (2009) (state prosecutors are entitled to absolute prosecutorial immunity for acts taken in their official capacity); *Imbler v. Pachtman*, 424 U.S. 409, 427, 430–31 (1976) (holding prosecutors absolutely immune from civil suits for damages under § 1983 for initiating criminal prosecutions and presenting cases); *Torres v. Goddard*, 793 F.3d 1046, 1051 (9th Cir. 2015) ("[C]riminal prosecutors may claim absolute immunity from damages liability for actions 'intimately associated with the judicial phase of the criminal process,' such as the prosecutor's initiation of a prosecution and presentation of the state's case.") (quoting *Imbler*, 424 U.S. at 430).

Plaintiff also fails to state a § 1983 claim against the remaining Defendants. There are two methods for state prisoners to raise complaints in federal court related to their imprisonment. *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Federal law opens two main avenues to relief on complaints related to imprisonment: a petition for habeas corpus and a complaint under [§ 1983]"). In general, claims of constitutional violations related to the "circumstances of confinement" must be brought in a civil rights action under § 1983, *see id.*, while constitutional challenges to the validity or duration of a prisoner's confinement must be raised in a petition for federal habeas corpus under 28 U.S.C. § 2254, or through appropriate state relief. *Wilkinson v. Dotson*, 544 U.S. 74, 78–79 (2005) ("This Court has held that a prisoner in state custody cannot use a § 1983 action to challenge 'the fact or duration of his confinement.'") (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)); *see also Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc) ("The Court has long held that habeas is the exclusive vehicle for claims brought by state prisoners that fall within the core of habeas, and such claims may not be brought in a § 1983

action.") (citing *Wilkinson*, 544 U.S. at 81–82 ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings[] - *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.")). "Suits challenging the validity of the prisoner's continued incarceration lie within 'the heart of habeas corpus,' whereas 'a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody.'" *Ramirez v. Galaza*, 334 F.3d 850, 856 (9th Cir. 2003) (quoting *Preiser*, 411 U.S. at 498–99). The Supreme Court has stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).

Because Plaintiff seeks damages based on alleged violations of his constitutional rights to due process, effective assistance of counsel during his state court criminal proceedings, and his claim of false imprisonment, he may not proceed pursuant to § 1983 unless he can show his conviction has already been invalidated. *Id.*; *Ramirez*, 334 F.3d at 855–56 ("Absent such a showing, '(e)ven a prisoner who has fully exhausted available state remedies has no cause of action under § 1983.'") (quoting *Heck*, 512 U.S. at 489). This is because success on Plaintiff's claims would necessarily imply the invalidity of his conviction or sentence and consequently affect the duration of his confinement. *See Heck*, 512 U.S. at 486–87; *see also Pattillo v. Lombardo,* No. 2:17cv1849-JAD-VCF, 2017 WL

3622778, at *4 (D. Nev. Aug. 23, 2017) ("When a prisoner challenges the legality or duration of his custody, raises a constitutional challenge which could entitle him to an earlier release (such as ineffective assistance of counsel), or seeks damages for purported deficiencies in his state court criminal case, which effected a conviction or lengthier sentence, his sole federal remedy is the writ of habeas corpus.") (citing *Heck*, 512 U.S at 481–82); *Toney v. Ruiz*, No. 3:10cv0405 BTM (PCL), 2010 WL 2383787, at *2 (S.D. Cal. June 9, 2010) (noting that "ineffective assistance of counsel claims against [attorneys who represented plaintiff during his criminal trial and subsequent appeal] 'necessarily imply the invalidity' of [plaintiff's] criminal proceedings and continuing incarceration.") (citing *Heck*, 512 U.S. at 487).

Because it is clear the conviction which forms the basis of this § 1983 suit has not been invalidated by way of direct appeal, executive order, or through the issuance of either a state or federal court writ of habeas corpus, *Heck*, 512 U.S. at 487, Plaintiff's Complaint must be dismissed sua sponte for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b).  To the extent Plaintiff intended to present state law claims, the Court declines to accept supplemental jurisdiction over any such claims.  *See* 28 U.S.C. § 1367(c) (the Court may "decline to exercise supplemental jurisdiction" over any supplemental state law claim if it "has dismissed all claims over which it has original jurisdiction."); *Sanford v. Member Works, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine - judicial economy, convenience, fairness, and comity - will point toward declining to exercise jurisdiction over the remaining state-law claims.")

D.    Leave to Amend

Finally, while the Court would typically grant Plaintiff leave to amend in light of his pro se status, because it is absolutely clear Plaintiff cannot cure the pleading defects identified above, the dismissal is without leave to amend. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without

leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)); *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend).

### III.   CONCLUSION

For the reasons set forth above, the Court:

1) **GRANTS** Plaintiff's Motions to Proceed IFP (Docs. 4, 5);

2) **ORDERS** the Secretary of the CDCR, or his designee, to collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2);

3) **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov;

4) **DISMISSES** Plaintiff's Complaint *sua sponte* in its entirety without leave to amend based on a failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1).  The Court certifies that any appeal would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED**

DATE:  September 14, 2023

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE